INTERNATIONAL WOODWORKERS, ETC. *v.* FAIR LUMBER COMPANY

No. 40598          January 6, 1958          99 So. 2d 452

*Pyles & Tucker,* Jackson, for appellants.

404

*Livingston* & *Fair,* Louisville, for appellees.

Roberds, P. J.

This litigation grows out of a labor dispute.

On the night of August 15, 1955, the members of the local labor union, employees of the Fair Lumber Com-

pany, a corporation, domiciled at Louisville, Mississippi, called a strike at that plant, effective the next morning.

On August 17, 1955, the Fair Lumber Company presented to Judge Robert G. Gillespie, Associate Justice of the Supreme Court of the State of Mississippi, a petition requesting the issuance of a temporary injunction against the local union at the Fair Lumber Company and some seventy-six individuals. For grounds of issuance of the injunction the petition averred that the members of the local union had engaged in various act of intimidation, threats, coercion and violence at the said plant. Specifically, it averred that at six o'clock on the morning of August 16, 1955, the defendants assembled in gangs and mobs on the highway and railroad tracks adjacent to the complainants' lumber mill, and blocked all entrances thereto, that they did use vile and abusive language directed to the employees of Fair who desired to work; that said strikers prevented persons hauling logs and lumber to the mill, and would not permit the railroad to deliver freight to the plant; that the strikers armed themselves with clubs, coca-cola bottles, and other weapons and exhibited these in a threatening manner towards any who approached the premises; that "said mobs formed a barricade at all entrances, with their bodies, to complainants' mill and made it impossible for vehicles, persons, and employees" to enter the plant proper and to use the railroad sidetracks for serving the plant, and prevented the customers and those having business with the Fair Lumber Company from entering upon the premises; that defendants engaged in mass picketing, intimidation, threats, and violence, and used vulgar and abusive language towards those attempting to enter said premises. Other specific acts of threats and violence and unlawful conduct were set out in the petition, which petition was sworn to by Davis L. Fair, Jr., the president of the corporation.

On August 17, 1955, Judge Gillespie granted a temporary injunction against the acts of coercion and intimida-

tion and unlawfulness set out in the petition, but permitted peaceful picketing by two pickets at each gate or entrance to the Fair plant.

· On August 18, 1955, the clerk of the Chancery Court of Winston County, Mississippi, issued the injunction as ordered in the fiat of Judge Gillespie.

The defendants filed a general and a special demurrer to the petition. They also answered, denying, in effect, the wrongful acts set out in the petition, and moved for dissolution of the injunction. The number of the foregoing cause on the docket of the Chancery Court of Winston County is 7800.

On August 24, 1955, the union and its members filed a bill against the Fair Lumber Company and its officers, asserting that the said lumber company and its officers and servants had been guilty of wrongful acts in that they had threatened the members of the union with violence, and the bill prayed that a temporary injunction issue against the corporation and its officers to restrain said conduct. On August 24, 1955, a temporary injunction issued out of the chancery court in accordance with the prayer of said petition. On September 28, 1955, the corporation and its officers filed an answer denying that they had committed the wrongful acts complained of in the bill filed by the members of the union.

The clerk of the chancery court issued a temporary injunction, enjoining the defendants "from going armed, sending armed men about the picket line of the said complainant labor union", and from furnishing any guns or ammunition to any person in or about the plant. The number of that proceeding was 7807. Both of the temporary injunctions were issued without notice to defendants.

The chancellor consolidated the two causes and a hearing was had on the merits at the September term 1955. Some sixty witnesses testified.

The chancellor found that the evidence sustained the allegations in the petition in Cause No. 7800, which pe-

tition had been presented to Judge Gillespie. He also found, after said extended hearing, that the allegations in the bill, No. 7807, filed by the members of the union against the corporation and its officers, had not been sustained by the proof.

He made permanent the injunction which had been granted by Judge Gillespie; he dissolved the temporary injunction which had been granted upon the bill in Cause No. 7807. But he enlarged upon the temporary injunction Judge Gillespie had granted in that he enjoined any and all types of picketing at the Fair Lumber Company plant, whereas Judge Gillespie, in his fiat, had permitted peaceful picketing at said plant by two pickets at each gate or entrance to the plant. From the foregoing adjudications by the chancery court, the members of the union have appealed to this Court.

██ ██ The main contention of the appellants is that the state court had no jurisdiction to adjudicate the issues involved in this proceeding. The members of the union say that the field covered by this litigation has been preempted by the Federal statutes and decisions and the proceedings of the Nation Labor Relations Board and that the state court has no power or jurisdiction to hear and determine these issues. On the other hand, the Fair Lumber Company and its officers and servants say that this is not a proceeding to regulate and determine the labor questions which are in dispute, but that it is simply a case where the police power of the state confers upon the state court the authority and power to prevent unlawful acts.

The foregoing question has been settled in favor of the contention of the Fair Lumber Company and its servants by the cases of Southern Bus Lines, Inc. v. Amalgamated Association of Street, Electric Railway and Motor Coach Employees, et al., 205 Miss. 354, 38 So. 2d 765, and James E. Youngdahl, W. Chandler, Ruth Ralph, Amalgamated Clothing Workers of America, C.

I. O., et al. v. Rainfair, Inc., decided by the Supreme Court of the United States December 9, 1957, which has not yet been reported in the official reports.

██ Ascertainment of the facts, under the disputed testimony, was the function of the trial court. ██ He had substantial and ample testimony to support his conclusions, and in such cases we have many times held that we will not disturb such findings. That is especially true in this case, where some sixty witnesses testified pro and con, and where, on the trial, a number of photographs were introduced, purportedly showing crowds of people gathered at different places and times about the mill plant, massed in a threatening manner. These pictures are not in the record. They were before the chancellor but we have not the benefit of whatever light they might reflect on the situation.

██ However, under the Youngdahl, et al. v. Rainfair, Inc. case, cited above, it was error for the chancery court in this cause to prohibit picketing altogether at the Fair mill. It could regulate, but not prohibit, peaceful picketing. This means that the actions of the lower court in dissolving the temporary injunction against Fair will be affirmed, but its action in undertaking to entirely prevent picketing at the Fair Company plant will be reversed. The right to picket in the method prescribed in the temporary injunction authorized by Judge Gillespie —that is to say, two pickets at each entrance to the plant —will be reinstated and the decree of the chancery court will be modified accordingly.

The costs incurred on this appeal will be divided equally between appellants and appellees.

Affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this opinion.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.

## ON SUGGESTION OF ERROR

HALL, J.

The suggestion of error in this case is hereby overruled.

■■■ The last portion of the suggestion of error requests that we tax the costs of the lower court against the appellants. In the opinion in this case we stated that the costs incurred on this appeal will be divided equally between appellants and appellees and the judgment entered on the opinon follows exactly what the opinon says so that we did not undertake to tax the costs of the lower court. That part of the suggestion of error will be treated as a motion to retax the costs. In this case we affirmed the decision of the lower court in part and overruled it in part and remanded the case to the lower court for further proceedings. We have made no effort to tax the costs of the lower court and do not feel that we should now do so, and the matter of costs in the lower court is left to the sound discretion of the chancellor. The motion to tax the costs accrued in the lower court against the appellants is therefore hereby overruled.

Suggestion of error overruled and motion to retax costs overruled.

*Roberds, P. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.